## APPEAL OF KANSAS SAVINGS & TRUST CO. ET AL., ADMINISTRATORS OF THE ESTATE OF A. W. SHULTHIS, DECEASED.

Docket No. 1827.   Submitted May 20, 1925.   Decided November 9, 1925.

1. A breeding farm *held* a business entered into for profit.
2. Decedent, associated with other individuals, received securities which, because of litigation surrounding their issue, could not be readily sold. In computing the profit from the transaction with which these bonds were received, a value of 80 per cent of par *held* reasonable.

*Walter F. Mehrlick, Esq.*, for the taxpayers.
*Ellis Manning, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income tax for the years 1919 to 1923, inclusive, in the amounts, respectively, of $4,895.64, $1,096.23, $942.30, $796.87, and $6,043.07— a total of $13,774.11. Not all of the deficiency is in issue. The administrators appeal from the disallowance of certain expenses incurred by the decedent in connection with the operation of a stock farm near Independence, Kans., from an alleged duplication of a profit on a certain joint venture, and from the inclusion in income of interest on certain bonds which defaulted and which interest was never received.

### FINDINGS OF FACT.

The decedent for several years prior to and up to the time of his death on December 29, 1922, conducted a horse farm near his city residence, consisting of about 40 acres of ground, with stables, a race track, and other necessary equipment. There were about 50

horses kept on the farm, including some 30 brood mares, 2 stallions, and about 20 young horses that were being trained.

. The stables were plain in design, constructed by the farm hands and described as "just rafters and corrugated iron." The farm was never at any time used as a show place or for social purposes. There were four men employed in looking after the farm—an experienced horse breeder and trainer, and three helpers.

From time to time some horses were bought for breeding purposes, and some of the trained horses were sold for whatever profit could be made. The total expenses incurred in conducting this farm, as shown on the schedule submitted by the examining revenue agent, which was admitted in evidence by stipulation of counsel, are as follows: For 1919, $6,488.15; 1920, $8,839.36; 1921, $9,537.46; 1922, $11,642.06; and 1923, $10,394.52. The total receipts were included in the decedent's income and the Commissioner, in determining the deficiency, disallowed the above expenses.

The above expenses were incurred in a venture entered into for profit and were not personal expenses of the decedent.

The decedent, during the years 1921 and 1922, held a one-fourth interest in the partnership of the Stanton-Amerman Construction Co., a firm organized for the sole purpose of laying pavement and putting in storm sewers and waterworks for the City of Pawhuska, Okla. This work was completed and payment made to the company in the fall of 1922 in the form of certain waterworks and sewer bonds payable by the city at large and other paving bonds payable out of the amounts assessed against the improved property, all maturing in from one to ten years.

These bonds were sold to the Citizens First National Bank about August, 1922, by Shulthis, agent for the Stanton-Amerman Construction Co., with a written agreement dated December 19, 1922, that the company would repurchase the bonds if at any time they should fail to pay interest. At that time Shulthis was president of the Citizens First National Bank.

In the fall of 1922, or about the time the bonds were sold to the bank, litigation arose in which the citizens of Pawhuska sought to have the paving bonds declared null and void. This litigation was not finally settled until 1925.

The last of the bonds were received by the Stanton-Amerman Construction Co. in September or October, 1922. About $5,000 or $6,000 of them were sold to a Mrs. Miller, of Independence, Kans., in that year, prior to the inception of the suit, for 80 cents on the dollar, with the guarantee that the bank would repurchase them at the same price should they default in interest.

Shulthis invested in the Stanton-Amerman Construction Co. $40,000, plus interest on that amount in the sum of $3,060, plus interest on $35,860 in the sum of $97.74, making a total of $43,157.74.

On this investment he received the following: December 15, 1922, $8,000 in Pawhuska paving bonds, face value, which he entered upon his books at $7,200; May 22, 1923, cash in the amount of $23,554; December 31, 1923, $25,000 in Pawhuska paving bonds, face value, making a total of $56,554 in cash and bonds at par.

In his income-tax return for the year 1922 the decedent reported as distributable from the above-mentioned partnership the amount of $10,478.75. The Pawhuska paving bonds included in that computation of profit had at the date received a fair market value of 80 per cent of their face value, although, because of the litigation which had arisen, that value was not readily realizable at that time in cash.

For the year 1923 the administrators of the decedent's estate returned net income on account of the Stanton-Amerman venture of $12,596.26, which, through error, included the above-mentioned amount of $10,478.75.

During the years 1922 and 1923 the decedent owned certain bonds of the Constatin Refining Co., which, during the year 1923, went into the hands of a receiver, defaulted in its interest on the said bonds amounting to $1,080 at June 1, 1923, and defaulted on all subsequent interest. Said amount of $1,080 was included by the Commissioner in the determination of the net income of the decedent for the year 1923.

#### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, under Rule 50.

#### OPINION.

JAMES: We are satisfied from all the evidence that the horse-breeding farm operated by the decedent near Independence, Kans., was operated as a business venture and that the expenses incurred in connection therewith should be allowed as a deduction from income.

In connection with the Stanton-Amerman venture, the administrators claim that no profit should have been assigned until the venture was finally wound up and the bonds became salable in 1925 by reason of the favorable termination of the litigation over the paving contracts. It appears that the decedent himself placed the valuation of 80 per cent of par value upon the bonds received in connection with this venture, and that the partnership must have placed at least as high a

valuation upon them in computing the distributive shares of the partners in 1922.

The evidence of lack of value of the bonds is confined entirely to the litigation, which at most merely delayed their payment. It does not appear from the evidence what the basis of the litigation was, or whether, had it resulted favorably to those opposing the paving assessments, the result would have been to invalidate the bonds even in the hands of decedent.

It appears, however, that through error the profit upon this transaction was twice reported in somewhat varying amounts. The total profit actually realized upon the basis of par value of the bonds was $13,396.26, and, upon the basis of taking the bonds at 80 per cent of the face value, was $6,796.26, all in the year 1922, upon the assumption that this represented distributable income from the partnership of Stanton-Amerman. The amount of $6,796.26 should be used in the computation of the decedent's net income for the year 1922.

The item of interest on the bonds of the Constantin Refining Co. should be eliminated from income for the year 1922, never having been received by the decedent.